**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINSEVILLE DIVISION**

**Case no. 1:26-cv-00088-MW-MJF**

**ROBERT HINES as duly appointed**
**Personal Representative of the Estate of**
**L.M., JR. (a deceased minor),**
**NIKKI REPPERT as duly appointed**
**Personal Representative of the Estate of**
**J.C. (a deceased minor),**
**LA-ZONDRA RANDOLPH, ESQ. as duly appointed**
**Personal Representative of the Estate of**
**P.M. (a deceased minor), and**
**LA-ZONDRA RANDOLPH, ESQ. as duly appointed**
**Personal Representative of the Estate of**
**T.R. (a deceased minor),**
**Plaintiffs,**

**v.**

**ALAN PALMER,**
**FLORIDA HIGHWAY PATROL, a division of**
**FLORIDA DEPARTMENT OF HIGHWAY**
**SAFETY AND MOTOR VEHICLES,**
**DAVE KERNER in his capacity as Director of Florida Department of Highway Safety and Motor Vehicles,**
**GARY HOWZE II in his capacity as Director of Florida Highway Patrol,**
**GORDON SMITH in his capacity as the duly elected sheriff of Bradford County, FL,**
**TRINTON LOVELL,**
**CHRISTOPHER GARDINER,**
**BRANDON WHITEHEAD,**
**AMERICAN HONDA MOTOR COMPANY INC.,**
**HONDA MOTOR CO., LTD., and**
**TIOGA CENTER LLC,**
**TIOGA CENTER RLKE LLC,**
**TIOGA COMMUNITY MANAGEMENT LLC,**
**TIOGA LLC,**
**TIOGA CENTER OFFICE CONDOMINIUM ASSOC. INC.**
**TOWN OF TIOGA COMMUNITY ASSOC. INC.,**
**JOHN DOE OFFICERS 1–10, and**
**JANE DOE SUPERVISORS 1–5,**
**Defendants.**
_______________________________/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, ROBERT HINES as duly appointed Personal Representative of the Estate of L.M., JR. (a deceased minor), NIKKI REPPERT as duly appointed Personal Representative of the Estate of J.C. (a deceased minor), LA-ZONDRA RANDOLPH, ESQ. as duly appointed Personal Representative of the Estate of P.M. (a deceased minor), and LA-ZONDRA RANDOLPH, ESQ. as duly appointed Personal Representative of the Estate of T.R. (a deceased minor), by and through undersigned counsel, hereby files this Amended Complaint and Demand for Jury Trial against Defendants, ALAN PALMER, FLORIDA HIGHWAY PATROL, a division of FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, DAVE KERNER in his capacity as Director of Florida Department of Highway Safety and Motor Vehicles, GARY HOWZE II in his capacity as Director of Florida Highway Patrol, GORDON SMITH in his capacity as the Duly Elected Sheriff of Bradford County, FL, TRINTON LOVELL, CHRISTOPHER GARDINER, BRANDON WHITEHEAD, AMERICAN HONDA MOTOR COMPANY INC., HONDA MOTOR CO., LTD., TIOGA CENTER LLC, TIOGA CENTER RLKE LLC, TIOGA COMMUNITY MANAGEMENT LLC, TIOGA LLC, TIOGA CENTER OFFICE CONDOMINIUM ASSOC. INC., TOWN OF TIOGA COMMUNITY ASSOC. INC., JOHN DOE OFFICERS 1–10, and JANE DOE SUPERVISORS 1–5 and allege:

Plaintiffs file this Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). This amendment is timely and made within the period permitted by the rule, and no leave of Court is required.

1. This is a civil rights action arising from the deaths of four minor boys following a high-speed police pursuit and intentional ramming maneuver conducted by Defendant Trooper Alan Palmer.

2. The incident culminated when Trooper ALAN PALMER executed a Precision Immobilization Technique ("PIT maneuver") at highway speeds, causing the vehicle to overturn and strike a utility pole, killing all occupants.



***Screenshot of Vehicle Containing Minor Plaintiffs***

3. Upon information and belief, Defendant TIOGA CENTER LLC owned and operated the apartment complex where the subject vehicle was stolen. To the extent discovery reveals that the apartment complex was left unsecured or otherwise made readily accessible in a manner creating a foreseeable risk of vehicle theft and subsequent harm to the public.

4. The use of deadly force was objectively unreasonable under the Fourth and Fourteenth Amendments, particularly given the juveniles' status, the nature of the underlying offense (a non-violent property crime), and the extreme risk created to human life.

5. Defendant DAVE KERNER, in his official capacity Director of Florida Department of Highway Safety and Motor Vehicles, was responsible for the policies, practices, training, and

supervision of Florida Highway Patrol deputies, including those governing the initiation, continuation, and coordination of high-speed pursuits.

6. Defendant GARY HOWZE II, in his official capacity Director of Florida Highway Patrol, was responsible for the policies, practices, training, and supervision of Florida Highway Patrol deputies, including those governing the initiation, continuation, and coordination of high-speed pursuits.

7. Defendant GORDON SMITH, in his official capacity as Sheriff of Bradford County, Florida, was responsible for the policies, practices, training, and supervision of Bradford County Sheriff's Office deputies, including those governing the initiation, continuation, and coordination of high-speed pursuits.

8. Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD, acting within the course and scope of their employment as deputies of the Bradford County Sheriff's Office, initiated and/or continued a high-speed pursuit of the subject vehicle under circumstances where the risks to the public outweighed any legitimate law enforcement need.

9. Said Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD further requested and/or coordinated with the Florida Highway Patrol to continue the pursuit at high speeds, despite the known and foreseeable risk that such conduct would escalate the danger to the vehicle's occupants and the public.

10. At all times material, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD failed to exercise reasonable care and failed to adhere to applicable policies and standards governing high-speed pursuits, thereby contributing to the sequence of events that resulted in the decedents' deaths.

11. The vehicle itself, a 2024 Honda CR-V, lacked basic safety functionality such as remote immobilization in the event of a vehicle being flagged as stolen.

12. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

13. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for the state law claims.

14. Venue is proper in this District because the events occurred in Bradford and Alachua Counties, Florida.

15. All notice requirements and conditions precedent to bringing this action have occurred, or have been otherwise satisfied, including the notice requirements set forth in §768.28, Florida Statutes. Notice letters were timely provided to BSO and the Florida Department of Financial Services as required by section 768.28(6)(a), Florida Statutes.

**STATUTORY SURVIVORS**

**L.M.**

16. Plaintiff ROBERT HINES as duly appointed Personal Representative of the Estate of L.M., JR. is a resident of the State of Florida and is otherwise *sui juris*.

17. The statutory survivors for the Estate of L.M., JR. are as follows:

a. Lawrence McClendon Sr. is the surviving father of L.M., Jr., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

b. Shaniqua Glasco is the surviving mother of L.M., Jr., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

c. Redene Brooks is the surviving grandmother and guardian of L.M., Jr., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

**J.C.**

18. Plaintiff NIKKI REPPERT as duly appointed Personal Representative of the Estate of J.C. is a resident of the State of Florida and is otherwise *sui juris*.

a. Marcus Chever is the surviving father of J.C., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

b. Nikki Reppert is the surviving mother of J.C., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

**P.M.**

19. Plaintiff LA-ZONDRA RANDOLPH, ESQ. as duly appointed Personal Representative of the Estate of P.M. is a resident of the State of Florida and is otherwise *sui juris*.

a. Eugene Hale III is the surviving father of P.M., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

b. Takarra Moore is the surviving mother of P.M., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

**T.R.**

20. Plaintiff LA-ZONDRA RANDOLPH, ESQ. as duly appointed Personal Representative of the Estate of T.R. is a resident of the State of Florida and is otherwise *sui juris*.

a. Willie Roberts is the surviving father of T.R., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

b. Ruby Lee Webb is the surviving mother of T.R., and a statutory survivor under the Florida Wrongful Death Act, § 768.16, et seq.

**DEFENDANTS**

21. Defendant ALAN PALMER was at all times a Florida Highway Patrol trooper acting under color of state law.

22. Defendant FLORIDA HIGHWAY PATROL, a division of FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES (FHP) is responsible for policies, training, supervision, and discipline of FHP troopers.

23. Defendant KERNER is the Director of Florida Department of Highway Safety and Motor Vehicles and having exclusive powers and authority pursuant to Florida Law and the Constitution of the State of Florida.

24. Defendant HOWZE II is the Director of the Florida Highway Patrol and having exclusive powers and authority pursuant to Florida Law and the Constitution of the State of Florida.

25. Sheriff SMITH is the constitutionally elected Sheriff of the Bradford County Sheriff's Office ("BSO") and having exclusive powers and authority pursuant to Florida Law and the Constitution of the State of Florida.

26. At all times material, TRINTON LOVELL was a deputy for the Bradford County Sheriff's Office.

27. CHRISTOPHER GARDINER was a deputy for the Bradford County Sheriff's Office.

28. BRANDON WHITEHEAD was a deputy for the Bradford County Sheriff's Office.

29. Defendants JOHN DOE OFFICERS 1–10 are law enforcement officers whose identities are currently unknown but who participated in, supervised, authorized, or failed to intervene in the conduct described herein, including decisions related to dispatch, pursuit authorization, command-level escalation, and the use of force. Plaintiffs will seek leave to amend to identify these individuals once their identities are ascertained through discovery.

30. Defendants JANE DOE SUPERVISORS 1–5 are supervisory personnel responsible for oversight, authorization, or ratification of the pursuit and use of force described herein, whose identities are presently unknown. Plaintiffs will seek leave to amend to identify these individuals once their identities are ascertained through discovery.

31. Defendant AMERICAN HONDA MOTOR COMPANY, INC. is a foreign for-profit entity authorized to, and doing business in the State of Florida.

32. HONDA MOTOR CO., LTD., is a foreign for-profit entity authorized to, and doing business in the State of Florida.

33. TOWN OF TIOGA COMMUNITY ASSOCIATION, INC. is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

34. Tioga LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

35. Tioga Center LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

36. Tioga Center Office Condominium Association, Inc. is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

37. Tioga Center RLKE LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

38. Tioga Community Management LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

## FACTUAL ALLEGATIONS

39. On or about April 20, 2024, four minor Black children were occupants of a vehicle that became the subject of a law enforcement pursuit initiated by members of the Florida Highway Patrol ("FHP") and associated agencies.

40. Trooper ALAN PALMER initiated or joined a pursuit allegedly involving a reported stolen 2024 Honda CR-V.

41. The underlying suspected offense was a non-violent property offense (stolen vehicle).

42. At all relevant times, the minor decedents were nonviolent individuals who posed no immediate threat of serious bodily harm or death to law enforcement officers or the public sufficient to justify the use of deadly force.

43. During the pursuit, the vehicle reached high speeds and traveled through multiple jurisdictions.

44. Trooper ALAN PALMER activated emergency equipment and engaged in the pursuit.

45. Rather than safely disengaging or employing de-escalation techniques appropriate for a vehicle known or reasonably believed to contain juveniles, law enforcement officers escalated the encounter into a high-speed pursuit.

46. During the pursuit, officers, including Defendant ALAN PALMER, engaged in conduct that intentionally prolonged and intensified the danger, including aggressive pursuit tactics across multiple jurisdictions.

47. At all relevant times, Defendant ALAN PALMER and other officers were aware, or reasonably should have been aware, that:

a. The occupants were minors;

b. The pursuit involved extreme speeds;

c. The roadway conditions posed a substantial risk of catastrophic injury or death; and

d. Any forced immobilization maneuver could result in fatal consequences.

48. Despite these known risks, Defendant ALAN PALMER made the conscious decision to engage in a Precision Immobilization Technique ("PIT maneuver") against the vehicle.

49. The PIT maneuver was executed at an approximate speed of 66 miles per hour, a speed that dramatically increases the likelihood of rollover, loss of control, and fatal injury, particularly when used against a vehicle occupied by unrestrained or vulnerable individuals.

50. A Precision Immobilization Technique ("PIT maneuver") executed at highway speeds—particularly at or above approximately 60 miles per hour—constitutes deadly force because it creates a substantial and well-known likelihood of rollover, catastrophic collision, and death. The risks associated with such a maneuver are widely known within law enforcement and form part of standard training regarding the limitations and dangers of PIT maneuvers. Courts recognize that force which is likely to cause serious bodily injury or death is, by definition, deadly force under the Fourth Amendment. The preservation of human life must take precedence over apprehension.

51. At the time Defendant ALAN PALMER executed the PIT maneuver, he knew or reasonably should have known that forcibly destabilizing a vehicle traveling at approximately 66 miles per hour would likely result in loss of control, rollover, and fatal injury to the occupants, particularly where the vehicle contained minor occupants.

52. Defendants affirmatively created and escalated a dangerous situation that would not otherwise have existed, placing the minor Decedents in a position of extreme peril through the initiation, continuation, and escalation of a high-speed pursuit and the deployment of a high-speed PIT maneuver. Defendants' affirmative conduct substantially increased the danger to the minor Decedents beyond any risk that existed prior to law enforcement's involvement.

53. The PIT maneuver was performed on a public roadway without adequate regard for:

a. The age and vulnerability of the occupants;

b. The foreseeable risk of rollover;

c. The presence of fixed roadside hazards; and

d. The availability of less dangerous alternatives.

54. As a direct result of Defendant ALAN PALMER's use of force, the vehicle violently rotated, left the roadway, overturned, and collided with a fixed utility pole.

55. All four minors died as a direct result of the PIT maneuver and resulting crash.

56. Following autopsy, the District Eight Medical Examiner's Office determined the manner of death of each of the four minor Decedents to be homicide. A homicide classification under Florida forensic standards means that death resulted from the volitional act of another person, regardless of criminal intent. This official, independent governmental finding constitutes an authoritative determination that the deaths of L.M. JR., J.C., P.M., and T.R. were caused by the conduct of another — namely, the deliberate execution of a high-speed PIT maneuver by Defendant ALAN PALMER. The homicide rulings directly contradict any characterization of these deaths as mere accidents or unavoidable consequences, and they confirm that the force applied by Defendant PALMER was the proximate cause of the minor Decedents' deaths. The medical examiner's findings are consistent with and corroborate the allegations of excessive force, battery, and wrongful death set forth in this Complaint.

57. The deaths of the minor decedents were entirely foreseeable consequences of the decision to deploy a high-speed PIT maneuver under the circumstances present.

58. At no point prior to the PIT maneuver did Defendant ALAN PALMER exhaust or meaningfully consider less intrusive alternatives, including:

a. Disengaging the pursuit;

b. Coordinated containment strategies;

c. Air support monitoring;

d. Roadblock deployment under controlled conditions; or

e. Waiting for safer conditions to effectuate a stop.

59. Defendant ALAN PALMER's conduct constituted a deliberate and reckless disregard for human life, particularly the lives of minor children.

60. The use of a PIT maneuver at such speeds constitutes deadly force.

61. Upon information and belief, the FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES and associated agencies maintained policies, customs, or practices that:

a. Permitted or encouraged high-speed pursuits under dangerous conditions;

b. Failed to adequately restrict PIT maneuvers at high speeds;

c. Failed to account for the presence of juveniles or vulnerable individuals; and

d. Prioritized apprehension over preservation of life.

62. These policies and practices were a moving force behind the constitutional violations and wrongful deaths of the minor decedents.

63. FHP's institutional culture actively glorified and promoted the use of PIT maneuvers. FHP and its regional troop divisions maintained official social media accounts, including Instagram accounts such as "FHP Tampa" and others, on which the agency regularly posted dashcam footage of PIT maneuvers being executed on fleeing vehicles, celebrating these

incidents as examples of successful enforcement under the agency's self-styled "Rule #1" slogan. These posts were made with institutional approval and presented high-speed forced contact as routine, desirable, and emblematic of FHP's enforcement culture. FHP also released dashcam videos of PIT maneuvers to the press, which were widely republished by local and regional news media throughout Florida. This pattern of public glorification reinforced a departmental culture in which troopers were encouraged to deploy the PIT maneuver aggressively, without adequate regard for speed, occupant vulnerability, or the risk of death.

64. Approximately four months before the deaths of the minor Decedents, in December 2023, FHP overhauled its pursuit and PIT maneuver policy in ways that dramatically expanded trooper discretion and removed critical safety restrictions. Among the most significant changes: (a) the prior policy required supervisor approval before initiating a chase or executing a PIT maneuver — that requirement was eliminated, leaving the decision entirely to the individual trooper's split-second judgment; (b) the prior policy limited pursuits to felony offenses, reckless driving, or DUI, and stated in bold that all other pursuits were prohibited — that limitation was removed; (c) prior restrictions against using the PIT maneuver on large or heavy vehicles unless deadly force was authorized were deleted; and (d) the prior requirement to consider roadside obstacles, such as utility poles, before executing a PIT was removed. These policy changes directly contradicted federal recommendations issued in a 2023 study commissioned by the U.S. Department of Justice and the National Highway Traffic Safety Administration, which found the PIT maneuver to be "high-risk" and recommended it be "prohibited under all but very narrowly defined circumstances," and advised against its use above 40 miles per hour or against vehicles carrying passengers. At the time FHP loosened its policy, the agency's own written policy already acknowledged — twice — that "the greater the speed, the greater the likelihood of injury or death."

Rather than acting on that acknowledged risk, FHP moved in the opposite direction. The FHSMV's executive director publicly defended the new policy, stating the agency would use "every tool and tactic available" to apprehend suspects, framing apprehension as the paramount objective regardless of the risk to human life.

65. Upon information and belief, Defendant ALAN PALMER was not adequately trained or supervised regarding:

a. The constitutional limits of force during vehicle pursuits;

b. The proper use of PIT maneuvers;

c. The heightened duty owed to minors; and

d. The need to accommodate individuals with disabilities.

66. The conduct of Defendant ALAN PALMER and other involved officers shocks the conscience and constitutes an abuse of governmental power.

67. As a direct and proximate cause of Defendants' actions and omissions, the minor decedents lost their lives.

68. At all times material, deputies of the Bradford County Sheriff's Office ("BSO"), including Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD, participated in, initiated, continued, coordinated, or otherwise contributed to the law enforcement pursuit described herein.

69. Defendant GORDON SMITH, in his official capacity as Sheriff of Bradford County, Florida, was responsible for the policies, practices, training, and supervision of BSO deputies, including those governing the initiation, continuation, and coordination of high-speed pursuits.

70. At all relevant times, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD were acting within the course and scope of their employment and under color of state law.

71. During the pursuit, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD knew or reasonably should have known that the continued high-speed pursuit created an extreme and unjustifiable risk of death or serious bodily harm to the vehicle's occupants and the public.

72. Despite these known risks, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD initiated and/or continued the pursuit under circumstances where the risks to human life outweighed any legitimate law enforcement need.

73. Said Defendants further requested and/or coordinated with the Florida Highway Patrol to continue the pursuit at high speeds, thereby escalating the danger and contributing to the sequence of events that resulted in the decedents' deaths.

74. Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD failed to exercise reasonable care, failed to adhere to applicable policies and standards governing high-speed pursuits, and failed to intervene to prevent the escalation of a known deadly risk.

75. The conduct of these Defendants constituted deliberate indifference to human life and was a direct and proximate cause of the deaths of the minor decedents.

76. Upon information and belief, the Bradford County Sheriff's Office, through Defendant GORDON SMITH, maintained policies, customs, or practices that permitted or encouraged dangerous high-speed pursuits, failed to impose meaningful limitations or supervisory oversight, and prioritized apprehension over the preservation of life.

77. These policies, customs, and practices were a moving force behind the constitutional violations and wrongful deaths described herein.

78. Defendant AMERICAN HONDA MOTOR COMPANY, INC. and Defendant HONDA MOTOR CO., LTD. (collectively "Honda") designed, manufactured, marketed, distributed, and sold the subject 2024 Honda CR-V with knowledge that such vehicles are frequently stolen and thereafter operated in a dangerous manner, including high-speed flight from law enforcement.

79. At all times material, Honda knew or reasonably should have known that modern vehicles, including the subject 2024 Honda CR-V, would foreseeably be involved in law enforcement pursuits, including those involving juvenile or untrained drivers.

80. Despite this foreseeable risk, the subject vehicle was defectively designed in that it lacked reasonable and available safety technology, including but not limited to remote immobilization or speed-limiting functionality capable of being deployed once a vehicle is reported stolen.

81. Feasible safer alternative designs existed at the time the subject vehicle left Honda's control, including remote disablement systems, geofencing, or other telematics-based interventions that could have reduced or eliminated the need for a high-speed pursuit.

82. The absence of such safety features rendered the subject vehicle unreasonably dangerous for its intended and foreseeable uses.

83. In addition, the subject 2024 Honda CR-V was not reasonably crashworthy and failed to provide adequate occupant protection in foreseeable high-speed crash scenarios, including loss of control events, rollover events, and impacts with fixed objects.

84. Upon information and belief, the vehicle's structural integrity, restraint systems, and/or crash energy management systems failed to perform in a manner that would reasonably protect occupants during the collision sequence described herein.

85. The injuries and deaths sustained by the minor decedents were enhanced and exacerbated by the vehicle's defective design and lack of crashworthiness, beyond those that would have occurred in a reasonably safe vehicle.

86. Honda further failed to adequately warn or instruct regarding the absence of remote immobilization or similar safety features, and the risks associated with operation of the vehicle when stolen or operated by unauthorized individuals.

87. The design defects, crashworthiness defects, and failures to warn attributable to Honda were direct and proximate causes, and/or substantial contributing factors, in the deaths of the minor decedents.

88. Upon information and belief, at or near the time Defendant ALAN PALMER executed the PIT maneuver, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and/or BRANDON WHITEHEAD were in radio communication with Defendant PALMER and/or with dispatch and were aware, or reasonably should have been aware, that a PIT maneuver was imminent or was being contemplated. Each of these Defendants had the realistic ability and opportunity to intervene — including by communicating via radio to terminate or abort the maneuver, by instructing dispatch to order disengagement, or by directly contacting Defendant PALMER — and failed to do so despite the known and foreseeable risk of death to the vehicle's occupants.

89. Upon information and belief, one or more of the minor Decedents suffered from mental and/or developmental disabilities, including but not limited to cognitive or intellectual

impairments, which substantially limited one or more major life activities. These disabilities affected or may have affected the minor Decedents' capacity to appreciate the gravity of their circumstances, to respond appropriately to law enforcement commands, and to control or exit the vehicle safely. Law enforcement officers knew or reasonably should have known, based on the ages of the occupants, the nature and duration of the pursuit, and the observable behavior of the vehicle's occupants, that one or more occupants may have had diminished capacity, and were required to take that possibility into account in determining what force, if any, to deploy.

90. The combined acts and omissions of all Defendants, acting individually and in concert, directly and proximately caused the deaths of the minor decedents.

**COUNT ONE**
**–**
**42 U.S.C. § 1983 (Excessive Force – Fourth Amendment)**
**ALL PLAINTIFFS V. DEFENDANT ALAN PALMER**

91. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

92. By intentionally striking the subject vehicle with his patrol vehicle in order to terminate its movement, Defendant ALAN PALMER intentionally applied force and intentionally seized the vehicle and its occupants within the meaning of the Fourth Amendment.

93. The force used by Defendant ALAN PALMER constituted deadly force because, under the circumstances alleged, a high-speed PIT maneuver created a substantial risk of causing death or serious bodily injury to the occupants of the vehicle.

94. At the time Defendant ALAN PALMER used that force, the minor Decedents were suspected, at most, of involvement in a non-violent property offense, and they did not pose an

immediate threat of serious physical harm to Defendant ALAN PALMER or to others sufficient to justify the use of deadly force.

95. Defendant ALAN PALMER knew, or reasonably should have known, before executing the PIT maneuver that the chase involved extreme speeds, that the roadway conditions and roadside hazards created an acute risk of catastrophic injury, and that forcibly destabilizing the vehicle at approximately 66 miles per hour made rollover, ejection, or fatal collision highly foreseeable.

96. Less intrusive and less dangerous alternatives were available, including disengagement, coordinated containment, controlled deployment of stop measures, and waiting for safer conditions, but Defendant ALAN PALMER did not exhaust or meaningfully consider such alternatives before using deadly force.

97. Under the totality of the circumstances and balancing the nature and quality of the intrusion on the Decedents' Fourth Amendment interests against the governmental interests at stake, Defendant ALAN PALMER's use of deadly force was objectively unreasonable.

98. As a direct and proximate result of Defendant ALAN PALMER's unconstitutional seizure and use of excessive force, the vehicle overturned and collided with a utility pole, inflicting fatal injuries on L.M. JR., J.C., P.M., and T.R..

99. Defendant ALAN PALMER acted under color of the statutes, ordinances, customs, policies, and usage of the State of Florida and the Florida Highway Patrol at all material times.

100. As a direct and legal result of Defendant ALAN PALMER's conduct, Plaintiffs and the Estates have suffered the injuries and damages recoverable under 42 U.S.C. § 1983 and applicable law, including the Decedents' conscious pain and suffering, loss of life, funeral and related expenses where recoverable, and all other damages permitted by law.

101. At all times material, it was clearly established that law enforcement officers may not use deadly force to seize a suspect who does not pose an immediate threat of serious physical harm to the officer or others. Tennessee v. Garner, 471 U.S. 1 (1985). It was further clearly established within the Eleventh Circuit that the use of force likely to cause death or serious bodily injury constitutes excessive force where the suspect does not present an immediate threat justifying such force. Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003). Defendant ALAN PALMER's conduct violated clearly established constitutional rights of which a reasonable officer would have known, and he is therefore not entitled to qualified immunity.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, ALAN PALMER, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT TWO**
**-**
**NEGLIGENCE - WRONGFUL DEATH**
**ALL PLAINTIFFS V. DEFENDANT ALAN PALMER**

102. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

103. At all times material hereto, Defendant ALAN PALMER was a Florida Highway Patrol trooper acting within the course and scope of his employment.

104. Defendant PALMER owed a duty to operate his patrol vehicle and to conduct law enforcement activities, including the execution of any vehicular maneuver, in a reasonably safe manner consistent with his training and applicable operational standards so as to avoid creating an unreasonable risk of harm to others.

105. Plaintiffs plead this claim in the alternative and allege that, to the extent Defendant PALMER's conduct is not found to be intentional, it constituted negligence.

106. Defendant PALMER breached his duty of reasonable care by negligently executing a Precision Immobilization Technique ("PIT maneuver") under circumstances that created a foreseeable and unreasonable risk of serious bodily injury or death, including but not limited to:

a. Executing the PIT maneuver at a speed and under conditions that made loss of control and rollover substantially likely;
b. Failing to exercise reasonable care in assessing the risks posed by the maneuver given the roadway conditions and surrounding hazards;
c. Failing to employ safer alternatives or to delay the maneuver until it could be performed under safer conditions;
d. Failing to comply with applicable training and operational standards governing the execution of PIT maneuvers; and
e. Otherwise negligently operating his patrol vehicle in a manner that created an unreasonable risk of death or serious bodily injury.

107. As a direct and proximate result of Defendant PALMER's negligence, the subject vehicle lost control, overturned, and collided with a fixed object, causing the deaths of the minor Decedents.

108. As a direct and proximate result of Defendant's conduct, Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, ALAN PALMER, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT THREE**
**-**
**Monell Liability (Policy, Custom, Failure to Train)**
**ALL PLAINTIFFS V FLORIDA HIGHWAY PATROL, A DIVISION OF FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**

109. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

110. At all times material hereto, Defendant FLORIDA HIGHWAY PATROL ("FHP"), a division of the Florida Department of Highway Safety and Motor Vehicles, was responsible for

establishing, implementing, maintaining, and enforcing policies, customs, and practices governing vehicle pursuits, the use of force during such pursuits, and the deployment of Precision Immobilization Technique ("PIT maneuvers").

111. FHP, through its final policymakers, maintained, promulgated, ratified, and/or was deliberately indifferent to policies, customs, and practices that permitted or encouraged troopers to:

a. Initiate and continue high-speed pursuits for non-violent offenses;
b. Employ PIT maneuvers at speeds and under conditions that create a substantial risk of death or serious bodily injury;
c. Prioritize apprehension over the preservation of human life; and
d. Fail to meaningfully account for the presence of juveniles or other vulnerable occupants in pursued vehicles.
e. FHP further maintained policies, customs, or practices that were facially deficient or were applied in a manner that failed to impose meaningful limitations on:
f. The maximum speed at which PIT maneuvers may be executed;
g. The conditions under which pursuits must be terminated;
h. The assessment of risk versus necessity during pursuit events; and
i. The requirement to disengage where the danger to human life outweighs the governmental interest in immediate apprehension.

112. In addition, FHP failed to adequately train, supervise, and discipline its troopers regarding:

a. The constitutional limitations on the use of deadly force during vehicle pursuits;
b. The risks associated with PIT maneuvers at highway speeds;
c. The proper balancing of law enforcement objectives against the risk to human life; and
d. The heightened considerations required when officers know or should know that minors are present.

113. The need for such training, supervision, and discipline was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to provide adequate guidance is highly likely to result in constitutional violations and loss of life.

114. FHP's policies, customs, practices, and failures to train and supervise constituted deliberate indifference to the constitutional rights of persons, including the minor Decedents, with whom its troopers would come into contact.

115. FHP, through its policymakers, also ratified the unconstitutional conduct described herein by failing to meaningfully investigate, discipline, or correct the use of deadly force under circumstances such as those presented in this case.

116. The foregoing policies, customs, practices, ratification, and failures were the moving force behind the constitutional violations alleged herein, as they directly caused, authorized, and foreseeably led to Defendant ALAN PALMER's decision to execute a high-speed PIT maneuver under conditions that made death or catastrophic injury substantially likely.

117. The need for appropriate policies, training, and supervision was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to impose meaningful limitations is highly likely to result in constitutional violations and loss of life. Defendants' failure to implement such safeguards constitutes deliberate indifference.

118. As a direct and proximate result of FHP's unconstitutional policies, customs, practices, and deliberate indifference, the minor Decedents suffered fatal injuries. Plaintiffs and the Estates seek all damages available under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, FLORIDA HIGHWAY PATROL, a division of FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

## COUNT FOUR
## -
## Monell Liability (Policy, Custom, Failure to Train)
## ALL PLAINTIFFS V DAVE KERNER in his capacity as Director of FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

119. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

120. At all times material hereto, Defendant KERNER, was responsible for establishing, implementing, maintaining, and enforcing policies, customs, and practices governing vehicle pursuits, the use of force during such pursuits, and the deployment of Precision Immobilization Technique ("PIT maneuvers").

121. Defendant KERNER, through FHSMV, maintained, promulgated, ratified, and/or was deliberately indifferent to policies, customs, and practices that permitted or encouraged troopers to:

a. Initiate and continue high-speed pursuits for non-violent offenses;
b. Employ PIT maneuvers at speeds and under conditions that create a substantial risk of death or serious bodily injury;
c. Prioritize apprehension over the preservation of human life; and
d. Fail to meaningfully account for the presence of juveniles or other vulnerable occupants in pursued vehicles.
e. FHP further maintained policies, customs, or practices that were facially deficient or were applied in a manner that failed to impose meaningful limitations on:
f. The maximum speed at which PIT maneuvers may be executed;
g. The conditions under which pursuits must be terminated;
h. The assessment of risk versus necessity during pursuit events; and
i. The requirement to disengage where the danger to human life outweighs the governmental interest in immediate apprehension.

122. In addition, Defendant KERNER failed to adequately train, supervise, and discipline its troopers regarding:

a. The constitutional limitations on the use of deadly force during vehicle pursuits;
b. The risks associated with PIT maneuvers at highway speeds;
c. The proper balancing of law enforcement objectives against the risk to human life; and

d. The heightened considerations required when officers know or should know that minors are present.

123. The need for such training, supervision, and discipline was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to provide adequate guidance is highly likely to result in constitutional violations and loss of life.

124. FHP's policies, customs, practices, and failures to train and supervise constituted deliberate indifference to the constitutional rights of persons, including the minor Decedents, with whom its troopers would come into contact.

125. Defendant KERNER, through FHSMV, also ratified the unconstitutional conduct described herein by failing to meaningfully investigate, discipline, or correct the use of deadly force under circumstances such as those presented in this case.

126. The foregoing policies, customs, practices, ratification, and failures were the moving force behind the constitutional violations alleged herein, as they directly caused, authorized, and foreseeably led to Defendant ALAN PALMER's decision to execute a high-speed PIT maneuver under conditions that made death or catastrophic injury substantially likely.

127. The need for appropriate policies, training, and supervision was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to impose meaningful limitations is highly likely to result in constitutional violations and loss of life. Defendants' failure to implement such safeguards constitutes deliberate indifference.

128. As a direct and proximate result of Defendant KERNER's unconstitutional policies, customs, practices, and deliberate indifference, the minor Decedents suffered fatal injuries. Plaintiffs and the Estates seek all damages available under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, DAVE KERNER in his capacity as Director of FLORIDA DEPARTMENT OF HIGHWAY SAFETY

AND MOTOR VEHICLES, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT FIVE**
**-**
**Monell Liability (Policy, Custom, Failure to Train)**
**ALL PLAINTIFFS V GARY HOWZE II in his capacity as Director of FLORIDA HIGHWAY PATROL**

129. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

130. At all times material hereto, Defendant HOWZE, was responsible for establishing, implementing, maintaining, and enforcing policies, customs, and practices governing vehicle pursuits, the use of force during such pursuits, and the deployment of Precision Immobilization Technique ("PIT maneuvers").

131. Defendant HOWZE, through FHP, maintained, promulgated, ratified, and/or was deliberately indifferent to policies, customs, and practices that permitted or encouraged troopers to:

a. Initiate and continue high-speed pursuits for non-violent offenses;
b. Employ PIT maneuvers at speeds and under conditions that create a substantial risk of death or serious bodily injury;
c. Prioritize apprehension over the preservation of human life; and
d. Fail to meaningfully account for the presence of juveniles or other vulnerable occupants in pursued vehicles.
e. FHP further maintained policies, customs, or practices that were facially deficient or were applied in a manner that failed to impose meaningful limitations on:
f. The maximum speed at which PIT maneuvers may be executed;
g. The conditions under which pursuits must be terminated;
h. The assessment of risk versus necessity during pursuit events; and
i. The requirement to disengage where the danger to human life outweighs the governmental interest in immediate apprehension.

132. In addition, Defendant HOWZE failed to adequately train, supervise, and discipline its troopers regarding:

a. The constitutional limitations on the use of deadly force during vehicle pursuits;
b. The risks associated with PIT maneuvers at highway speeds;
c. The proper balancing of law enforcement objectives against the risk to human life; and
d. The heightened considerations required when officers know or should know that minors are present.

133. The need for such training, supervision, and discipline was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to provide adequate guidance is highly likely to result in constitutional violations and loss of life.

134. FHP's policies, customs, practices, and failures to train and supervise constituted deliberate indifference to the constitutional rights of persons, including the minor Decedents, with whom its troopers would come into contact.

135. Defendant HOWZE, through FHP, also ratified the unconstitutional conduct described herein by failing to meaningfully investigate, discipline, or correct the use of deadly force under circumstances such as those presented in this case.

136. The foregoing policies, customs, practices, ratification, and failures were the moving force behind the constitutional violations alleged herein, as they directly caused, authorized, and foreseeably led to Defendant ALAN PALMER's decision to execute a high-speed PIT maneuver under conditions that made death or catastrophic injury substantially likely.

137. The need for appropriate policies, training, and supervision was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to impose meaningful limitations is highly likely to result in constitutional violations and loss of life. Defendants' failure to implement such safeguards constitutes deliberate indifference.

138. As a direct and proximate result of Defendant HOWZE's unconstitutional policies, customs, practices, and deliberate indifference, the minor Decedents suffered fatal injuries. Plaintiffs and the Estates seek all damages available under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, GARY HOWZE II in his capacity as Director of FLORIDA HIGHWAY PATROL, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT SIX**
**–**
**Monell Liability (Policy, Custom, Failure to Train)**
**ALL PLAINTIFFS V. GORDON SMITH in his capacity as the duly elected sheriff of Bradford County, FL**

139. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

140. At all times material hereto, Defendant GORDON SMITH, in his official capacity as Sheriff of Bradford County, Florida, was the final policymaker for the Bradford County Sheriff's Office ("BSO") with respect to policies, practices, training, supervision, and discipline governing vehicle pursuits and coordination with outside law enforcement agencies.

141. Defendant SMITH, through BSO, maintained, promulgated, implemented, and/or ratified policies, customs, and practices that permitted or encouraged deputies to:

a. Initiate and continue high-speed pursuits for non-violent offenses;
b. Continue pursuits under circumstances where the risk to human life outweighed any legitimate law enforcement need;
c. Request, invite, or coordinate with other agencies, including the Florida Highway Patrol, to continue or escalate pursuits;
d. Fail to terminate or disengage from pursuits once they became unreasonably dangerous; and
e. Fail to intervene to prevent the use of excessive or deadly force by other officers participating in the pursuit.

142. BSO further maintained policies, customs, or practices that were facially deficient or were applied in a manner that failed to impose meaningful limitations on:

a. When deputies must terminate a pursuit;
b. The assessment of risk versus necessity during pursuit events;

c. Inter-agency coordination during pursuits; and
d. The obligation to disengage where continuation of the pursuit creates a substantial risk of death or serious bodily injury.

143. Defendant SMITH, through BSO, also failed to adequately train, supervise, and discipline deputies, including Defendants LOVELL, GARDINER, and WHITEHEAD, regarding:

a. The constitutional limitations on initiating and continuing high-speed pursuits;
b. The duty to terminate pursuits when risks outweigh the governmental interest;
c. The duty to intervene to prevent excessive or deadly force by other officers; and
d. The proper coordination and communication with other agencies to prevent escalation of dangerous pursuits.

144. The need for such training, supervision, and discipline was obvious, as high-speed pursuits are recurring situations that present a known and substantial risk of death or serious bodily injury if not properly controlled.

145. Despite this obvious need, Defendant SMITH, through BSO, acted with deliberate indifference by failing to implement adequate policies, training, supervision, and discipline.

146. Defendant SMITH, through BSO, further ratified the unconstitutional conduct described herein by failing to meaningfully investigate, discipline, or correct the actions of deputies who initiated, continued, and escalated the pursuit that resulted in the deaths of the minor Decedents.

147. The policies, customs, practices, failures to train and supervise, and ratification described herein were the moving force behind the constitutional violations alleged in this Complaint, as they directly caused, authorized, and foreseeably led to:

a. the initiation and continuation of the high-speed pursuit by BSO deputies; and
b. the escalation of that pursuit, including the involvement of FHP and the use of a high-speed PIT maneuver.

148. As a direct and proximate result of these unconstitutional policies and practices, the minor Decedents suffered fatal injuries. Plaintiffs and the Estates seek all damages available under 42 U.S.C. § 1983 and applicable law.

149. The need for appropriate policies, training, and supervision was obvious, as vehicle pursuits and PIT maneuvers present recurring situations in which the failure to impose meaningful limitations is highly likely to result in constitutional violations and loss of life. Defendant SMITH's failure to implement such safeguards constitutes deliberate indifference to the constitutional rights of persons with whom BSO deputies would foreseeably come into contact.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, GORDON SMITH in his capacity as duly elected Sheriff of Bradford County, Florida, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT SEVEN**
**–**
**42 U.S.C. § 1983 (Excessive Force – Fourth Amendment)**
**All Plaintiffs v. Defendant TRINTON LOVELL (Individual Capacity)**

150. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

151. At all times material hereto, Defendant TRINTON LOVELL was a deputy with the Bradford County Sheriff's Office acting under color of state law and within the course and scope of his employment.

152. Defendant LOVELL participated in the initiation and/or continuation of a high-speed vehicle pursuit involving the minor Decedents, thereby intentionally applying force and participating in a seizure within the meaning of the Fourth Amendment.

153. The force used during the pursuit, including the decision to initiate and continue a high-speed chase under the circumstances alleged, constituted excessive and unreasonable force because it created a substantial and unjustifiable risk of serious bodily injury or death to the occupants of the vehicle.

154. At the time Defendant LOVELL participated in initiating and continuing the pursuit, the suspected offense was a non-violent property offense, and the occupants did not pose an immediate threat of serious physical harm to law enforcement officers or the public sufficient to justify the level of force employed.

155. Defendant LOVELL knew, or reasonably should have known, that the pursuit involved extreme speeds, that continuation of the pursuit would escalate the danger, and that it created a high likelihood of catastrophic injury or death to the occupants of the vehicle and others.

156. Despite this knowledge, Defendant LOVELL initiated and/or continued the pursuit under circumstances where the risk to human life outweighed any legitimate governmental interest.

157. Defendant LOVELL further failed to take reasonable steps to terminate or de-escalate the pursuit once it became unreasonably dangerous and failed to intervene to prevent the use of excessive or deadly force by other officers, including the execution of a high-speed PIT maneuver.

158. Under the totality of the circumstances, Defendant LOVELL's conduct was objectively unreasonable and in violation of the Fourth Amendment to the United States Constitution.

159. As a direct and proximate result of Defendant LOVELL's unconstitutional conduct, the pursuit escalated, culminating in the use of a high-speed PIT maneuver and resulting in the fatal injuries sustained by the minor Decedents.

160. Defendant LOVELL acted willfully, maliciously, and with reckless disregard for the constitutional rights and safety of the Decedents.

161. As a direct and legal result of Defendant LOVELL's conduct, Plaintiffs and the Estates have suffered damages recoverable under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, TRINTON LOVELL, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT EIGHT**
**-**
**NEGLIGENCE - Wrongful Death**
**ALL PLAINTIFFS V. TRINTON LOVELL**

162. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

163. At all times material hereto, Defendant TRINTON LOVELL was a deputy with the Bradford County Sheriff's Office acting within the course and scope of his employment.

164. Defendant TRINTON LOVELL owed a duty to exercise reasonable care in the initiation, continuation, and coordination of any vehicle pursuit so as to avoid creating an unreasonable risk of harm to others, including the occupants of the pursued vehicle and the general public.

165. Defendant TRINTON LOVELL breached this duty of care by negligently initiating and/or continuing a high-speed pursuit under circumstances where the risk to human life outweighed any legitimate law enforcement need, including but not limited to:

a. Initiating and/or continuing the pursuit despite the non-violent nature of the suspected offense;
b. Failing to adequately assess the risks posed by the pursuit, including speed, roadway conditions, and surrounding hazards;

c. Failing to terminate or de-escalate the pursuit once it became unreasonably dangerous;
d. Requesting, encouraging, or coordinating with other law enforcement agencies, including the Florida Highway Patrol, to continue the pursuit under dangerous conditions; and
e. Failing to comply with applicable policies, procedures, and standards governing high-speed pursuits.

166. Defendant TRINTON LOVELL knew or reasonably should have known that continuing the pursuit under such conditions created a high likelihood of catastrophic injury or death.

167. As a direct and proximate result of Defendant TRINTON LOVELL's negligence, the pursuit escalated and culminated in a high-speed PIT maneuver, causing the vehicle to lose control, overturn, and collide with a fixed object, resulting in the deaths of the minor Decedents.

168. As a direct and proximate result of Defendant's conduct, Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, TRINTON LOVELL, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT NINE**
**–**
**42 U.S.C. § 1983 (Excessive Force – Fourth Amendment)**
**ALL PLAINTIFFS V. DEFENDANT CHRISTOPHER GARDINER (Individual Capacity)**

169. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

170. At all times material hereto, Defendant CHRISTOPHER GARDINER was a deputy with the Bradford County Sheriff's Office acting under color of state law and within the course and scope of his employment.

171. Defendant CHRISTOPHER GARDINER participated in the initiation, continuation, and escalation of a high-speed vehicle pursuit involving the minor Decedents and was an integral participant in the law enforcement conduct that resulted in their seizure within the meaning of the Fourth Amendment.

172. The force used to terminate the pursuit, including the execution of a high-speed PIT maneuver, constituted excessive and unreasonable force because it created a substantial and unjustifiable risk of serious bodily injury or death to the occupants of the vehicle.

173. At the time Defendant CHRISTOPHER GARDINER participated in initiating and continuing the pursuit, the suspected offense was a non-violent property offense, and the occupants did not pose an immediate threat of serious physical harm to law enforcement officers or the public sufficient to justify the level of force ultimately used.

174. Defendant CHRISTOPHER GARDINER knew, or reasonably should have known, that the pursuit involved extreme speeds, that continuation of the pursuit would escalate the danger, and that it created a high likelihood of catastrophic injury or death to the occupants of the vehicle and others.

175. Despite this knowledge, Defendant CHRISTOPHER GARDINER initiated and/or continued the pursuit under circumstances where the risk to human life outweighed any legitimate governmental interest.

176. Defendant CHRISTOPHER GARDINER further requested, encouraged, and/or coordinated with other law enforcement officers, including the Florida Highway Patrol, to continue the pursuit, thereby contributing to the escalation of force that resulted in the use of a high-speed PIT maneuver.

177. Defendant CHRISTOPHER GARDINER failed to take reasonable steps to terminate or de-escalate the pursuit once it became unreasonably dangerous and failed to intervene to prevent the use of excessive or deadly force by other officers when he had the opportunity and ability to do so.

178. Under the totality of the circumstances, Defendant CHRISTOPHER GARDINER's conduct was objectively unreasonable and in violation of the Fourth Amendment to the United States Constitution.

179. As a direct and proximate result of Defendant CHRISTOPHER GARDINER's unconstitutional conduct, the pursuit escalated and culminated in the use of a high-speed PIT maneuver, resulting in the fatal injuries sustained by the minor Decedents.

180. Defendant CHRISTOPHER GARDINER acted willfully, maliciously, and with reckless disregard for the constitutional rights and safety of the Decedents.

181. As a direct and legal result of Defendant CHRISTOPHER GARDINER's conduct, Plaintiffs and the Estates have suffered damages recoverable under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, CHRISTOPHER GARDINER, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

## COUNT TEN
## -
## NEGLIGENCE - Wrongful Death
## ALL PLAINTIFFS V. CHRISTOPHER GARDINER

182. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

183. At all times material hereto, Defendant CHRISTOPHER GARDINER was a deputy with the Bradford County Sheriff's Office acting within the course and scope of his employment.

184. Defendant CHRISTOPHER GARDINER owed a duty to exercise reasonable care in the initiation, continuation, and coordination of any vehicle pursuit so as to avoid creating an unreasonable risk of harm to others, including the occupants of the pursued vehicle and the general public.

185. Defendant CHRISTOPHER GARDINER breached this duty of care by negligently initiating and/or continuing a high-speed pursuit under circumstances where the risk to human life outweighed any legitimate law enforcement need, including but not limited to:

a. Initiating and/or continuing the pursuit despite the non-violent nature of the suspected offense;
b. Failing to adequately assess the risks posed by the pursuit, including speed, roadway conditions, and surrounding hazards;
c. Failing to terminate or de-escalate the pursuit once it became unreasonably dangerous;
d. Requesting, encouraging, or coordinating with other law enforcement agencies, including the Florida Highway Patrol, to continue the pursuit under dangerous conditions; and
e. Failing to comply with applicable policies, procedures, and standards governing high-speed pursuits.

186. Defendant CHRISTOPHER GARDINER knew or reasonably should have known that continuing the pursuit under such conditions created a high likelihood of catastrophic injury or death.

187. As a direct and proximate result of Defendant CHRISTOPHER GARDINER's negligence, the pursuit escalated and culminated in a high-speed PIT maneuver, causing the vehicle to lose control, overturn, and collide with a fixed object, resulting in the deaths of the minor Decedents.

188. As a direct and proximate result of Defendant's conduct, Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, CHRISTOPHER GARDINER, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT ELEVEN**
**–**
**42 U.S.C. § 1983 (Excessive Force – Fourth Amendment)**
**ALL PLAINTIFFS V. DEFENDANT BRANDON WHITEHEAD (Individual Capacity)**

189. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

190. At all times material hereto, Defendant BRANDON WHITEHEAD was a deputy with the Bradford County Sheriff's Office acting under color of state law and within the course and scope of his employment.

191. Defendant BRANDON WHITEHEAD participated in the initiation, continuation, and escalation of a high-speed vehicle pursuit involving the minor Decedents and was an integral participant in the law enforcement conduct that resulted in their seizure within the meaning of the Fourth Amendment.

192. The force used to terminate the pursuit, including the execution of a high-speed PIT maneuver, constituted excessive and unreasonable force because it created a substantial and unjustifiable risk of serious bodily injury or death to the occupants of the vehicle.

193. At the time Defendant BRANDON WHITEHEAD participated in initiating and continuing the pursuit, the suspected offense was a non-violent property offense, and the occupants did not pose an immediate threat of serious physical harm to law enforcement officers or the public sufficient to justify the level of force ultimately used.

194. Defendant BRANDON WHITEHEAD knew, or reasonably should have known, that the pursuit involved extreme speeds, that continuation of the pursuit would escalate the danger, and that it created a high likelihood of catastrophic injury or death to the occupants of the vehicle and others.

195. Despite this knowledge, Defendant BRANDON WHITEHEAD initiated and/or continued the pursuit under circumstances where the risk to human life outweighed any legitimate governmental interest.

196. Defendant BRANDON WHITEHEAD further requested, encouraged, and/or coordinated with other law enforcement officers, including the Florida Highway Patrol, to continue the pursuit, thereby contributing to the escalation of force that resulted in the use of a high-speed PIT maneuver.

197. Defendant BRANDON WHITEHEAD failed to take reasonable steps to terminate or de-escalate the pursuit once it became unreasonably dangerous and failed to intervene to prevent the use of excessive or deadly force by other officers when he had the opportunity and ability to do so.

198. Under the totality of the circumstances, Defendant BRANDON WHITEHEAD's conduct was objectively unreasonable and in violation of the Fourth Amendment to the United States Constitution.

199. As a direct and proximate result of Defendant BRANDON WHITEHEAD's unconstitutional conduct, the pursuit escalated and culminated in the use of a high-speed PIT maneuver, resulting in the fatal injuries sustained by the minor Decedents.

200. Defendant BRANDON WHITEHEAD acted willfully, maliciously, and with reckless disregard for the constitutional rights and safety of the Decedents.

201. As a direct and legal result of Defendant BRANDON WHITEHEAD's conduct, Plaintiffs and the Estates have suffered damages recoverable under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, BRANDON WHITEHEAD, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

## COUNT TWELVE
## -
## NEGLIGENCE - Wrongful Death
## ALL PLAINTIFFS V. BRANDON WHITEHEAD

202. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

203. At all times material hereto, Defendant BRANDON WHITEHEAD was a deputy with the Bradford County Sheriff's Office acting within the course and scope of his employment.

204. Defendant BRANDON WHITEHEAD owed a duty to exercise reasonable care in the initiation, continuation, and coordination of any vehicle pursuit so as to avoid creating an

unreasonable risk of harm to others, including the occupants of the pursued vehicle and the general public.

205. Defendant BRANDON WHITEHEAD breached this duty of care by negligently initiating and/or continuing a high-speed pursuit under circumstances where the risk to human life outweighed any legitimate law enforcement need, including but not limited to:

a. Initiating and/or continuing the pursuit despite the non-violent nature of the suspected offense;
b. Failing to adequately assess the risks posed by the pursuit, including speed, roadway conditions, and surrounding hazards;
c. Failing to terminate or de-escalate the pursuit once it became unreasonably dangerous;
d. Requesting, encouraging, or coordinating with other law enforcement agencies, including the Florida Highway Patrol, to continue the pursuit under dangerous conditions; and
e. Failing to comply with applicable policies, procedures, and standards governing high-speed pursuits.

206. Defendant BRANDON WHITEHEAD knew or reasonably should have known that continuing the pursuit under such conditions created a high likelihood of catastrophic injury or death.

207. As a direct and proximate result of Defendant BRANDON WHITEHEAD's negligence, the pursuit escalated and culminated in a high-speed PIT maneuver, causing the vehicle to lose control, overturn, and collide with a fixed object, resulting in the deaths of the minor Decedents.

208. As a direct and proximate result of Defendant's conduct, Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, BRANDON WHITEHEAD, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

## COUNT THIRTEEN
## –
## NEGLIGENCE
## ALL PLAINTIFFS V. HONDA MOTOR CO., LTD.

209. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

210. At all times material hereto, Defendant Honda Motor Co., Ltd. designed, manufactured, assembled, tested, marketed, and distributed the subject vehicle.

211. Defendant Honda Motor Co., Ltd. owed a duty to design and manufacture the vehicle in a reasonably safe manner and to incorporate reasonable safety features and engineering controls to mitigate foreseeable risks associated with unauthorized use, including theft and subsequent dangerous operation.

212. Defendant breached this duty in one or more of the following ways:

a. Failing to incorporate reasonable and available anti-theft technologies, including immobilization systems or other measures designed to prevent or limit continued unauthorized operation of the vehicle;

b. Failing to implement available engineering controls intended to reduce the risk of high-speed operation following theft, including technologies capable of deterring or limiting prolonged unauthorized use;

c. Failing to adequately test, evaluate, or account for the known and foreseeable risks associated with stolen vehicles being operated in a reckless and dangerous manner;

d. Failing to design the vehicle with reasonable safeguards to mitigate the risk of harm to occupants and the public during foreseeable misuse, including high-speed flight from law enforcement; and

e. Otherwise negligently designing, manufacturing, and distributing the subject vehicle in a manner that rendered it unreasonably dangerous.

213. Defendant knew or should have known that motor vehicles are frequently stolen and thereafter operated in a dangerous manner, including high-speed pursuits, creating a foreseeable risk of serious injury or death.

214. As a direct and proximate result of Defendant's negligence, the vehicle remained operable after theft and contributed to the fatal incident resulting in the deaths of the Decedents.

215. Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, HONDA MOTOR CO., LTD., for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT FOURTEEN**
**–**
**STRICT LIABILITY**
**ALL PLAINTIFFS V. HONDA MOTOR CO., LTD.**

216. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

217. Defendant Honda Motor Co., Ltd. designed, manufactured, distributed, and sold the subject vehicle in a defective condition unreasonably dangerous to users and the public.

218. Specifically:

a. Design Defect – The subject vehicle lacked reasonable and available safety features and engineering controls, including but not limited to anti-theft or immobilization technologies and other systems intended to reduce or mitigate the risk of continued unauthorized operation, and was designed in a manner that posed an unreasonable risk of injury or death under normal and foreseeable use, including foreseeable misuse such as operation after theft;

b. Manufacturing Defect – The subject vehicle deviated from its intended design or specifications in a manner that rendered it unreasonably dangerous, to be further established through discovery;

c. Failure to Warn – Defendant failed to provide adequate warnings or instructions regarding the risks associated with unauthorized operation of the vehicle, including the foreseeable dangers associated with continued operation after theft.

219. The subject vehicle was unreasonably dangerous and defective because of its design, lack of sufficient warnings, lack of adequate safety features, and/or manufacturing defects.

220. Defendant is in the business of designing, manufacturing, and distributing motor vehicles and placed the subject vehicle into the stream of commerce.

221. The vehicle reached the user without substantial change in condition.

222. The risks associated with unauthorized operation and high-speed misuse were foreseeable.

223. As a direct and proximate result of the defective and unreasonably dangerous condition, the Decedents sustained fatal injuries.

224. Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, HONDA MOTOR CO., LTD., for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT FIFTEEN**
**–**
**NEGLIGENCE**
**ALL PLAINTIFFS V. AMERICAN HONDA MOTOR CO., INC.**

225. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

226. At all times material hereto, Defendant American Honda Motor Co., Inc. designed, manufactured, assembled, tested, marketed, and distributed the subject vehicle.

227. Defendant American Honda Motor Co., Inc. owed a duty to design and manufacture the vehicle in a reasonably safe manner and to incorporate reasonable safety features and engineering controls to mitigate foreseeable risks associated with unauthorized use, including theft and subsequent dangerous operation.

228. Defendant breached this duty in one or more of the following ways:

a. Failing to incorporate reasonable and available anti-theft technologies, including immobilization systems or other measures designed to prevent or limit continued unauthorized operation of the vehicle;

b. Failing to implement available engineering controls intended to reduce the risk of high-speed operation following theft, including technologies capable of deterring or limiting prolonged unauthorized use;

c. Failing to adequately test, evaluate, or account for the known and foreseeable risks associated with stolen vehicles being operated in a reckless and dangerous manner;

d. Failing to design the vehicle with reasonable safeguards to mitigate the risk of harm to occupants and the public during foreseeable misuse, including high-speed flight from law enforcement; and

e. Otherwise negligently designing, manufacturing, and distributing the subject vehicle in a manner that rendered it unreasonably dangerous.

229. Defendant knew or should have known that motor vehicles are frequently stolen and thereafter operated in a dangerous manner, including high-speed pursuits, creating a foreseeable risk of serious injury or death.

230. As a direct and proximate result of Defendant's negligence, the vehicle remained operable after theft and contributed to the fatal incident resulting in the deaths of the Decedents.

231. Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, AMERICAN HONDA MOTOR COMPANY INC., for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT SIXTEEN**
**–**
**STRICT LIABILITY**
**ALL PLAINTIFFS V. AMERICAN HONDA MOTOR CO., INC.**

232. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

233. Defendant American Honda Motor Co., Inc. designed, manufactured, distributed, and sold the subject vehicle in a defective condition unreasonably dangerous to users and the public.

234. Specifically:

a. Design Defect – The subject vehicle lacked reasonable and available safety features and engineering controls, including but not limited to anti-theft or immobilization technologies and other systems intended to reduce or mitigate the risk of continued unauthorized operation, and was designed in a manner that posed an unreasonable risk of injury or death under normal and foreseeable use, including foreseeable misuse such as operation after theft;

b. Manufacturing Defect – The subject vehicle deviated from its intended design or specifications in a manner that rendered it unreasonably dangerous, to be further established through discovery;

c. Failure to Warn – Defendant failed to provide adequate warnings or instructions regarding the risks associated with unauthorized operation of the vehicle, including the foreseeable dangers associated with continued operation after theft.

235. The subject vehicle was unreasonably dangerous and defective because of its design, lack of sufficient warnings, lack of adequate safety features, and/or manufacturing defects.

236. Defendant is in the business of designing, manufacturing, and distributing motor vehicles and placed the subject vehicle into the stream of commerce.

237. The vehicle reached the user without substantial change in condition.

238. The risks associated with unauthorized operation and high-speed misuse were foreseeable.

239. As a direct and proximate result of the defective and unreasonably dangerous condition, the Decedents sustained fatal injuries.

240. Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, AMERICAN HONDA MOTOR COMPANY INC., for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT SEVENTEEN**
**–**
**NEGLIGENT SECURITY**
**ALL PLAINTIFFS v. ALL TIOGA DEFENDANTS (I.E. TIOGA CENTER LLC, TIOGA CENTER RLKE LLC, TOWN OF TIOGA COMMUNITY ASSOCIATION INC, TIOGA LLC, TIOGA CENTER OFFICE CONDOMINIUM ASSOCIATION, INC., and TIOGA COMMUNITY MANAGEMENT LLC)**

241. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

242. TOWN OF TIOGA COMMUNITY ASSOCIATION, INC. is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

243. TIOGA LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

244. TIOGA CENTER LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

245. TIOGA CENTER OFFICE CONDOMINIUM ASSOCIATION, INC. is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

246. TIOGA CENTER RLKE LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

247. TIOGA COMMUNITY MANAGEMENT LLC is believed to have owned, operated, and/or managed the subject apartment complex and the associated parking lot where the subject vehicle was stolen.

248. Defendants owed a duty of care to maintain the premises in a reasonably safe condition and to take reasonable precautions against foreseeable criminal acts.

249. Defendants breached its duty by, among other things:

a. Failing to provide adequate security;

b. Failing to prevent foreseeable vehicle thefts;

c. Failing to warn of known dangers;

d. Failing to monitor the premises;

e. Failing to correct dangerous security deficiencies; and

f. Failing to adopt reasonable anti-theft policies.

250. Defendants knew or should have known that failure to provide adequate security created a foreseeable risk that a vehicle would be stolen and operated in a reckless or dangerous manner, including high-speed flight from law enforcement.

251. As a direct and proximate result of Defendants' negligence, the vehicle was stolen and operated by unauthorized individuals, which set in motion the sequence of events that resulted in the high-speed pursuit and the deaths of the minor Decedents.

252. As a direct and proximate result of Defendants' conduct, Plaintiffs seek all damages recoverable under the Florida Wrongful Death Act.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendants for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT EIGHTEEN**
**–**
**42 U.S.C. § 1983 – Failure to Intervene**
**ALL PLAINTIFFS V. TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD (Individual Capacities)**

253. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

254. At all times material, Defendants TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD were present for, participated in, or were aware of the high-speed pursuit and the escalation of force that culminated in the execution of a high-speed PIT maneuver.

255. These Defendants knew or reasonably should have known that the continued pursuit and ultimate use of a PIT maneuver at highway speeds constituted excessive and deadly force under the circumstances.

256. Each of these Defendants had a realistic opportunity to intervene to prevent the use of excessive force, including by terminating or de-escalating the pursuit, communicating the need to disengage, or otherwise preventing the deployment of a high-speed PIT maneuver.

257. Despite this opportunity, these Defendants failed to take reasonable steps to intervene and prevent the use of excessive and deadly force. Defendants had a duty to intervene to prevent the use of excessive force where they had the opportunity and means to do so.

258. As a direct and proximate result of these Defendants' failure to intervene, the minor Decedents suffered fatal injuries. The conduct of these Defendants violated clearly established constitutional rights, and they are liable under 42 U.S.C. § 1983. As a direct and legal result, Plaintiffs and the Estates seek all damages available under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, TRINTON LOVELL, CHRISTOPHER GARDINER, and BRANDON WHITEHEAD, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT NINETEEN**
**–**
**42 U.S.C. § 1983 – Substantive Due Process (Fourteenth Amendment)**
**ALL PLAINTIFFS V. ALL INDIVIDUAL DEFENDANTS**

259. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

260. Defendants' conduct, including the initiation, continuation, and escalation of a high-speed pursuit and the execution of a PIT maneuver at highway speeds, was so egregious, arbitrary, and conscience-shocking as to violate the substantive due process rights of the minor Decedents under the Fourteenth Amendment to the United States Constitution.

261. Defendants acted with deliberate indifference and/or intent to harm unrelated to any legitimate law enforcement objective.

262. The actions of Defendants created and substantially increased the danger to the minor Decedents and resulted in their deaths. Such conduct violates the Fourteenth Amendment under the standard set forth in County of Sacramento v. Lewis, 523 U.S. 833 (1998).

263. As a direct and proximate result, Plaintiffs are entitled to recover damages under 42 U.S.C. § 1983 and applicable law.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendants for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**COUNT TWENTY**
**–**
**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)**
**ALL PLAINTIFFS V. FHP AND BSO (Official Capacity Defendants)**

264. Plaintiffs reallege and incorporate paragraphs 1 through 90 as though fully set forth herein.

265. Upon information and belief, one or more of the minor Decedents suffered from mental and/or developmental disabilities which substantially limited one or more major life activities.

266. Defendants FHP and BSO are public entities subject to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

267. Defendants knew or reasonably should have known that the occupants of the vehicle included individuals with diminished capacity and failed to reasonably accommodate such disabilities in the course of the pursuit. Reasonable accommodations include, but are not limited to, de-escalation, modified pursuit tactics, and avoidance of force likely to cause catastrophic harm.

268. Defendants failed to provide reasonable accommodations and instead escalated the encounter, resulting in the deaths of the minor Decedents. As a direct and proximate result, Plaintiffs suffered damages recoverable under the ADA.

Wherefore, Plaintiffs demand a trial by jury and judgment against Defendant, FLORIDA HIGHWAY PATROL, a division of FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES and BRADFORD COUNTY SHERIFF'S OFFICE, for an amount within the jurisdictional limits of this court, to-wit: more than $75,000.00 and for such other relief to which Plaintiffs may be justly entitled.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all claims herein against all Defendants.

*/s/ Landon Stinson*
Landon D. Stinson
Florida Bar No. 1018971
D. Andrew Albrecht
Florida Bar No. 1022167
Beacon Legal, PLLC
***Pensacola***
(850) 262-7927
350 W. Cedar Street. #100
Pensacola, FL 32502
***Gainesville***
(352) 415-4571
2630-A NW 41st Street
Gainesville, FL 32606
Attorney for Plaintiff